UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------------------x

DR. EUGENE MISQUITH,

                        Plaintiff,

      v.

PALM BEACH COUNTY HEALTH CARE DISTRICT,
ST. MARY'S MEDICAL CENTER, ROBERT BORREGO
and PALM BEACH TRAUMA ASSOCIATES,

                        Defendants

------------------------------------------------------------------------x

## **COMPLAINT**

      Plaintiff, Dr. Eugene Misquith, by and through his attorneys, as and for his Complaint

against the Defendants herein, alleges, upon personal knowledge and upon information and

belief as to all other matters:

### **JURISDICTION AND VENUE**

1.   This is a civil action involving federal and state employment and breach of contract claims

    brought because Defendant Dr. Robert Borrego, the Director of the Trauma Center at

    Defendant St. Mary's Medical Center, which is funded by the Defendant Palm Beach

    County Health Care District, terminated, without the requisite notice, and without cause,

    for retaliatory and discriminatory reasons, in violation of law, the Plaintiff, Dr. Eugene

    Misquith from his position as a trauma surgeon at St. Mary's.  Dr. Misquith is a renowned

    trauma surgeon who has served the people of Palm Beach County at St. Mary's trauma

    center for nearly thirty (30) years.

1

2.  This civil action is brought pursuant to the Americans with Disabilities Act (ADA), as amended, Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq., 42 U.S.C.§ 1981, the Age Discrimination in Employment Act, 42 U.S.C. § 1983, state laws, and any other cause of action which can be inferred from the facts set forth herein, to redress discrimination against Plaintiff  in the terms, conditions and privileges of employment of Plaintiff by the Defendants, as well as deprivation by the Defendants of the rights, privileges and immunities secured to Plaintiff by the laws of the United States.

3.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper pursuant to 28 U.S.C. § 1391.

5.  Plaintiff is entitled to a jury trial pursuant to 18 U.S.C. §1514A(b)(2)E.

6.  All prerequisites to the institution of this action have been met.  A charge of discrimination was duly filed with the U.S. Equal Employment Opportunity Commission (EEOC) (See EEOC charge of discrimination, attached as Exhibit "1"), and a request that the complaint be cross-filed with the Florida Commission on Human Relations.  A Notice of Right to Sue letter was issued and mailed on April 14, 2020.  (See EEOC Notice of Right to Sue, attached as Exhibit "2").  This action is timely instituted within 90 days of receipt of the letter.

**THE PARTIES**

7.  The Plaintiff, Dr. Eugene Misquith, is a resident of the State of Florida, in the Southern District of Florida.

8.  That at all times mentioned herein, the Defendant, Palm Beach County Healthcare District, is an independent taxing district, chartered by the Legislature of the State of Florida.

9.  That at all times mentioned herein, the Defendant, St. Mary's Hospital, is a Florida corporation.

10. That at all times mentioned herein, the Defendant, Dr. Robert Borrego, is a resident of the State of Florida, in the Southern District of Florida.

11. Those at all times mentioned herein, the Defendant, Palm Beach Trauma Associates, is a partnership organized under the laws of the State of Florida, with Defendant Dr. Borrego as a principal.

## STATEMENT OF RELEVANT FACTS

### Plaintiff Dr. Misquith's Background

12. The Plaintiff, Dr. Eugene Misquith is an Indian-American male, aged 62, who suffers from a physical disability related to his chronic heart condition resulting in numerous heart surgeries.

13. Dr. Misquith was born in 1958, in India, and graduated from St. John's Medical College in Bangalore, India, in 1982.  He worked as a Senior House Officer from 1982 to 1984, with St. Martha's Hospital in Bangalore, India.

14. Dr. Misquith immigrated legally to the United States in 1984.

15. Dr. Misquith completed his general surgery residency at the Lincoln Medical and Mental Health Center, New York College, Westchester, New York, serving as Chief Resident of Surgery at the Lincoln Medical Center from July 1989, to June 1990.

16. Dr. Misquith became a proud, naturalized citizen of the United States in 1990.  He is married to a United States citizen and has two United States citizen adult children.

3

17. After completing his general surgery residency, Dr. Misquith obtained his medical license in Florida, and began working for the Defendant St. Mary's Hospital in or around May, 1991.  Dr. Misquith is board certified by the American Board of Surgery.

18. Dr. Misquith has served the people of Palm Beach County as a trauma surgeon for nearly thirty (30) years.  Dr. Misquith loved his work and patients, and is a renowned trauma surgeon, who is credited with saving many lives.

### Plaintiff Dr. Misquith's Physical Disability

19. Since 1995, Dr. Misquith has suffered from a chronic physical disability, Coronary Artery Disease, which has required him to occasionally take medical leave from St.  Mary's trauma center, to recuperate from multiple heart surgeries.

20. Dr. Misquith has undergone eight (8) emergency heart surgeries, including seven (7) angioplasties, one (1) open heart triple bypass surgery, and implantation of six (6) stents. The most recent procedure on August 30, 2018, required him to have an angioplasty.

21. Dr. Misquith has required leave ranging from two (2) months to a few days to recuperate after these procedures.

22. The Defendants, Palm Beach County Health Care District, St. Mary's Hospital, Dr. Robert Borrego, and Palm Beach Trauma Associates have all had notice of Dr. Misquith's heart condition.

### The nature of Plaintiff Dr. Misquith's Employment Relationship with Defendants Palm Beach County Health Care District, St. Mary's Hospital, Dr. Borrego, and Palm Beach Trauma Associates

23. In 1988, the people of Palm Beach County, voted by referendum, to create the Palm Beach County Health Care District. The Palm Beach County Health Care District was established

4

to assist in funding and providing necessary medical services to low-income and indigent members of the community.

24. The Palm Beach County Health Care District is funded by the taxpayers of Palm Beach County, and is directly responsible for the organization and management of trauma services offered in Palm Beach County.

25. From 1988 to 2013, the Palm Beach County Health Care District operated two (2) Level Two (2) trauma facilities in Palm Beach County.   In 2013, both trauma centers were upgraded to Level One (1) trauma centers, i.e. now licensed to handle the most complex trauma cases.  St. Mary's Hospital houses one of the Level One (1) trauma centers.

26. St. Mary's Hospital contracts with Palm Beach Trauma Associates and Dr. Borrego to provide services at St. Mary's Hospital's trauma center. The Palm Beach County Health Care District reimburses St. Mary's Hospital, Palm Beach Associates, and Dr. Borrego for services performed, and pays St. Mary's Hospital to maintain a trauma center on its campus.

27. In or around 1998, Plaintiff Dr. Misquith ceased to operate a private doctor's office, and practiced only from hospital.

28. In or around 1998, Plaintiff Dr. Misquith began to work exclusively for the Palm Beach County Health Care District and St. Mary's Hospital.

29. Dr. Misquith was effectively a joint employee of Palm Beach Trauma Associates, Dr. Robert Borrego, the Palm beach County Health Care District, and St. Mary's Hospital.

30. Dr. Misquith signed two agreements with the Palm Beach County Health Care District: one in 1999 and the second on or about October 7, 2009.  (See Ex. 1, EEOC Charge of Discrimination, Attachments --Ex. B, Trauma Physician's Agreement).   The last

agreement was a term agreement, "…automatically renewed for successive one year renewal terms unless the Agreement is sooner terminated in accordance with the provisions hereof." Id.at Section 6.1, p.7.

31. Dr. Misquith did not set his own hours, and was entirely subject to the schedule of calls created by Dr. Borrego.  Defendant Dr. Borrego scheduled calls only ten (10) to four (4) days in advance of the actual call.

32. Because Dr. Borrego spread out the calls and Dr. Misquith was required to be there whenever needed, the Defendants had total control of his schedule and he could not see private patients or patients at other hospitals.  As a result, all of his patients and work came through St. Mary's trauma center, and he was entirely economically dependent upon the Defendants.

33. Dr. Misquith was required to request vacation leave in writing, from his supervisor, Dr. Borrego, six (6) months in advance.  Requests for leave were documented in a book kept by the secretary of the trauma center at St. Mary's.

34. Dr. Misquith was not allowed by Dr. Borrego to request more than thirty (30) days of vacation per year.  Often, Dr. Misquith's requests for leave were denied, and he was forced to cancel, or change personal plans.  In the twenty (20) years that Dr. Misquith worked exclusively for Defendant St. Mary's trauma center, he was only allowed to take one (1) long vacation of ten (10) days.

35. Dr. Misquith was bound to work and be present for specific hours when Defendant Palm Beach Trauma Associates and Defendant Dr. Borrego scheduled him.

36. Defendant St. Mary's Hospital provided the trauma surgical center, equipment, diagnostic tools, and pharmaceuticals necessary for the treatment of the patients.

37. Dr. Misquith was subject to the direction and control of the Defendants Palm Beach County Health Care District, St. Mary's and Dr. Borrego.  Every aspect of his cases was looked at by Dr. Borrego, and Dr. Borrego had the final word on the type of care a patient would receive.

38. Dr. Misquith was paid on a regular, recurring basis by Defendants Dr. Borrego and Palm Beach Trauma Associates, who in turn, were reimbursed by Defendant Palm Beach County Health Care District.  (See Ex. 1, EEOC Charge of Discrimination, Attachments -- Ex. C, Dr. Misquith's paychecks issued by Defendants Palm Beach Trauma Associates and Dr. Borrego.)

39. Dr. Misquith's medical malpractice insurance was paid for and maintained by the Palm Beach Trauma Associates. (See Ex. 1, EEOC Charge of Discrimination, Attachments – Ex. A, Letter of Termination)

40. Upon information and belief, Dr. Misquith was the only Indian –American doctor, and one of the older doctors in the trauma center.

## Plaintiff Dr. Misquith's Report of Potential Fraud and Subsequent Whistleblower Retaliation

41. After Defendant St. Mary's Hospital was upgraded to a Level One (1) trauma center in 2013, Dr. Misquith was advised by his supervisor Defendant Dr. Borrego that it would now be the standard practice of St. Mary's Hospital and Dr. Borrego to accept all emergency room patient transfers to St. Mary's emergency room.  From St. Mary's emergency room it would then be decided whether or not the patient would be sent to St. Mary's trauma center.

42. Upon information and belief, many of the patients transferred to St. Mary's Hospital emergency room from other hospital's emergency rooms did not require trauma care and were sent home after being seen in St. Mary's emergency room.

43. The protocols implemented by St. Mary's Hospital and Dr. Robert Borrego resulted in patients being unnecessarily "double billed," for two emergency room services, and  billed for an additional ambulance ride from the first hospital's emergency room to the second emergency room at St. Mary's, all potentially unethical and/ or fraudulent practices.

44. Plaintiff Dr. Misquith repeated made his disagreement with this practice known to Dr. Borrego starting in 2013, and refused to comply.  He continued to consult on transfer calls, and only accepted transfers, who in his professional medical opinion met the criteria to be transferred to a Level One (1) trauma center.

45. On July 4, 2018, Defendant Dr. Borrego instructed Dr. Misquith, by e-mail, to accept <u>all</u> transfer patients, regardless of medical necessity. (See Ex. 1, EEOC Charge of Discrimination, Attachments --Ex. D – email from Dr. Borrego to Dr. Misquith dated July 4, 2018)

46. On July 6, 2018, Dr. Misquith followed-up Defendant Dr. Borrego's e-mail with a text message stating that he was uncomfortable with Dr. Borrego's email because, "The proposal in my opinion makes us collude with the hospital to increase their revenue and indirectly ours. Since I am on call today I will do what I have been doing all along which is being truthful with the outlying hospital." (See Ex. 1, EEOC Charge of Discrimination, Attachments --Ex. E – Text correspondence between Dr. Misquith and Dr. Borrego).

47. Dr. Misquith then met with his private attorney to discuss his concerns with the patient transfer protocol, and was advised that the current practices of St. Mary's Hospital and Dr. Robert Borrego were potentially illegal and fraudulent.

48. After meeting with his attorney, Dr. Misquith scheduled a meeting with Ms. Valerie Shariari, Esq., counsel to the Palm Beach County Health Care District.  Dr. Misquith acted out of a sense of honor and concern that St. Mary's was potentially violating laws enacted to protect the public and taxpayer, to wit, prohibitions on charging for unnecessary or duplicative medical services.

49. Dr. Misquith and Ms. Shariari met on July 17, 2018.  At that meeting, Dr. Misquith again raised the double billing of patients and  improper transfer procedures to St. Mary's emergency room and Level One (1) trauma center.  Ms. Shariari asked Dr. Misquith to return to meet her on July 26, 2018.

50. As requested, Dr. Misquith returned to meet Ms. Shariari, who had also asked the Palm Beach County Health Care District's outside counsel to join them.  Upon information and belief, the outside counsel attorneys present took complete notes of the meeting.  Dr. Misquith again raised his concerns, and was told that counsel would investigate his claims and get back to him.

51. Dr. Misquith trusted that Ms. Shariari would investigate and get back to him with a response, but he did not receive any.

52. On August 18, 2018, Defendant Dr. Borrego circulated another e -mail to the trauma surgeons informing the group those now all open fractures should have a trauma consultation.  . (See Ex. 1, EEOC Charge of Discrimination, Attachments --Ex.F, Email

from Dr. Borrego dated August 18, 2018).  Dr. Borrego further stated that <u>all</u> injured

patients should be admitted.  <u>Id.</u>

53. Dr. Misquith continued to raise objections and voice his concerns over Defendants'

potentially unethical and fraudulent transfer and billing practices.

54. After the Plaintiff, Dr. Misquith reporting his concerns with the unnecessary double

billing of patients and potential fraud to Defendants Dr. Borrego and Palm Beach County

Health Care District, he was retaliated against by the Defendants and Dr. Borrego.

55. In retaliation for Dr. Misquith blowing the whistle, Dr. Borrego cut the number of calls

Dr. Misquith would be scheduled for, thereby reducing the income Dr. Misquith would

receive from the hospital. (See Ex. 1, EEOC Charge of Discrimination, Attachments –-

Ex. E, Text correspondence between Dr. Misquith and Dr. Borrego).

56. After his calls were cut, Plaintiff Dr. Misquith again reached out to Palm Beach County

Health Care District counsel Ms. Shariari.  She told him that she was still working on his

complaint.  She also stated that Dr. Misquith could speak to the new CEO of Tenet

Corporation (the parent company of St. Mary's), or get an attorney.  Dr. Misquith then

reached out to one of the outside counsel attorneys who had been in the meeting of July

26, 2018.  Dr. Misquith asked him for the name of a "whistleblower" attorney, and the

outside counsel gave him the name of another attorney.

57.  In further retaliation, Defendants then suspended Dr. Misquith on September 12, 2018, on

a pre-textual claim that he had failed to complete certain administrative medical records.

(See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr.

Misquith and Dr. Borrego dated September 12, 2018).  Dr. Misquith had been on leave for

heart surgery on August 30, 2018, and, in fact, had completed the medical records on September 5, 2018. Id.

58. Dr. Misquith had never before been reprimanded, suspended, or placed on administrative leave in nearly thirty (30) years of service at St. Mary's Hospital.  In contrast, upon information and belief, in 1999, Defendant Dr. Borrego had been suspended as director of trauma services at St. Mary's, after he enabled another doctor to perform a surgery at St. Mary's who did not have the training, authorization or privileges to perform the surgery, and the patient subsequently died as a result of the surgery.

59. Defendants ultimately terminated Dr. Misquith without cause or explanation, and clearly in retaliation, for blowing the whistle on their unethical and potential fraudulent transfer and billing practices, his disability, race and age.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. A., Letter of Termination).

**Defendants Termination of Plaintiff Dr. Misquith**

60. In July 2018, as described supra, Plaintiff Dr. Misquith had reported his concerns regarding the potentially unethical and fraudulent transfer and billing protocols implemented by the Defendants at St. Mary's trauma center to the Palm Beach Health Care District.

61. In addition, on July 15, 2018, and August 30, 2018, Plaintiff Dr. Misquith had heart surgery, and required leave to recuperate.

62. Three months after Plaintiff Dr. Misquith's whistleblower report and heart surgery, without warning, Defendant Dr. Borrego terminated Dr. Misquith effective January 1,

2019, by letter dated November 27, 2018.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. A., Letter of Termination).

63. Upon information and belief, the Defendants did not go through the ordinary procedures and notice required when terminating a trauma surgeon under Defendant St. Mary's own bylaws and procedures.

64. In addition, the Defendants breached the Trauma Physician Agreement by not providing ninety (90) days' notice, as required for a no cause termination.  See Ex. 1, EEOC Charge of Discrimination, Attachments --Ex. B, Trauma Physician's Agreement, Section 6.4, and p.7.).

65. In the termination letter, Defendant Dr. Borrego stated that Dr. Misquith's medical malpractice coverage would expire on the date of his termination.  Id.

66. In the termination letter, Defendant Dr. Borrego gave no cause or explanation for termination, instead stating, "If you have questions concerning my decision to remove you … then you should contact me."   Id.  Dr. Misquith never received an explanation or cause for his termination from Dr. Borrego either verbally or in writing.

67. The termination letter was sent on Defendant St.Mary's Medical Center letter head, signed by Defendant Dr. Borrego, and cc'ed to Gabrielle Finley-Hazel, Chief Operating Officer, St. Mary's Medical Center; Darcy Davis, Chief Operating Officer, Palm Beach County Health Care District; Belma Andric, Vice President and Chief Medical Officer, Palm Beach Health Care District; and Sandra Smith, Director of the Trauma Agency and Clinical Aeromedical Services, Palm Beach County Health Care District.

68. Upon information and belief, Dr. Misquith was replaced in the trauma center by a younger, white doctor who has no physical disability.

69. Upon his sudden termination, and because he had been exclusively working for the Palm Beach Health Care District since 2000, and had no private doctor's office or patients, and in light of his physical disability and age, Dr. Misquith was forced to retire from medical practice, and lost years of substantial income from his practice.

70. The Defendants' actions have caused economic damages and emotional distress to Plaintiff Dr. Misquith, who cared deeply for his St. Mary's hospital patients, loved his work, and was at the height of his career and expected to work for several more years.

71. On September 19, 2019, Plaintiff Dr. Misquith filed claims of discrimination with the Equal Employment Opportunity Commission (EEOC), and requested that his claims be cross-filed with the Florida Commission on Human Relations.  On April 14, 2020, the EEOC issued a notice of right to sue, and the Plaintiff subsequently made timely filing with this Court.

## CAUSES OF ACTION

## AS AND FOR THE FIRST CAUSE OF ACTION – UNLAWFUL DISCHARGE DUE TO DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

72. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

73. This claim is authorized and instituted pursuant to the Americans with Disabilities Act (ADA) and its 2008 Amendments, 42 U.S.C. § 12101 et seq., based upon Defendants St. Mary's Hospital, Palm Beach County Health Care District, Palm Beach Trauma Associates, and Dr. Robert Borrego unlawful termination of Plaintiff due to Plaintiff's need for time off work after Plaintiff underwent a heart procedure.

74. "To state a discrimination claim under the ADA, plaintiff must allege sufficient facts to plausibly suggest (1) that he suffers from a disability; (2) that he is a qualified individual; and (3) that a covered entity discriminated against him on account of his disability." Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1246 (11th Cir. 2015).

75. "The ADA defines disability to include: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Id.

76. "For purposes of the ADA, a qualified individual is one who, with or without reasonable accommodation, can perform the essential functions of [his] employment. Id.

77. Plaintiff Dr. Misquith suffers from a physical disability due to a heart condition that substantially limits his work and personal life.

78. There is  record of Plaintiff Dr. Misquith's impairment as he has undergone eight (8) heart surgeries, including seven (7) angioplasties performed to restore his heart, one (1) triple bypass surgery, and six (6) stent placements.

79. Plaintiff Dr. Misquith is regarded as having such impairment because his employers, St. Mary's Hospital, Dr. Robert Borrego, Palm Beach Trauma Associates, and Palm Beach County Health Care District all had notice of Plaintiff's heart condition, and subsequent heart surgeries, since it began in 1995.

80. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St. Mary's Hospital for nearly (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

81. Plaintiff Dr. Misquith was discriminated against on account of his disability, when the Defendants terminated him, without cause or explanation, three months after he underwent heart surgery for the second time in a year and required medical leave to rest and recuperate.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. A., Letter of Termination).

## AS AND FOR THE SECOND CAUSE OF ACTION – RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

82. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

83. This claim is authorized and instituted pursuant to the Americans with Disabilities Act (ADA) and its 2008 Amendments, based upon Defendants St. Mary's Hospital, Palm Beach County Health Care District's, Palm Beach Trauma Associates', and Dr. Robert Borrego's unlawful termination of Plaintiff.

84. "To prevail on [his] ADA retaliation claim, plaintiff must show that: (1) [he] engaged in a statutorily protected expression; (2) [he] suffered an adverse employment action, and (3) there was a causal link between the two." Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016).

85. "The first element may be met by a request for a reasonable accommodation. The third element requires a showing of 'but-for' causation." Id.

86. Plaintiff Dr. Misquith engaged in a statutorily protected expression when he took medical leave to recuperate from heart surgery.

87. Plaintiff Dr. Misquith suffered an adverse employment action when he was suspended shortly after returning from medical leave, for the first time in a career, spanning nearly thirty (30) years, on a pre-textual claim that he had failed to complete certain medical

records, when the records were, in fact, completed. Plaintiff Dr. Misquith suffered further

employment action when he was terminated two (2) months thereafter.

88. There is a causal relationship between Plaintiff Dr. Misquith's request for reasonable

accommodation following life-saving heart surgery, and his suspension and termination.

On July 15, 2018, and August 30, 2018, Plaintiff Dr. Misquith had heart surgery, and

required leave to recuperate.  On September 5, 2018, Dr. Misquith completed his

administrative medical records.  On September 12, 2018, Defendants suddenly suspended

Dr. Misquith on the pre-textual claim that he had failed to complete the administrative

medical records. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G,

Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).

89. Three months after Plaintiff Dr. Misquith's heart surgery, and again without warning,

Defendant Dr. Borrego terminated Dr. Misquith effective January 1, 2019, by letter dated

November 27, 2018.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. A.,

Letter of Termination).

90. But for Plaintiff Dr. Misquith's request for medical leave following life-saving heart

surgeries, he would not have been subject to adverse employment action.

**AS AND FOR THE THIRD CAUSE OF ACTION – UNLAWFUL DISCHARGE DUE TO
DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE VII OF THE CIVIL
RIGHTS ACT, 42 U.S.C. § 2000e et seq.**

91. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of

the Complaint as though set forth at length herein, as and against Defendants.

92. This claim is authorized and instituted pursuant to Title VII of the Civil Rights Act, 42

U.S.C. §2000e, based upon the discriminatory practices of Defendants St. Mary's, Palm

Beach Trauma Associates, Palm Beach County Healthcare District, and Dr. Borrego.

93. To make out a prima face case of racial discrimination under Title VII, a plaintiff must show "(1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably" Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

94. Plaintiff Dr. Misquith is Indian-American, and therefore belongs to a protected racial class.

95. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St. Mary's Hospital for nearly (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

96.  Plaintiff Dr. Misquith was never reprimanded, suspended, nor placed on administrative leave in nearly thirty (30) years of service as a surgeon at St. Mary's Hospital.

97. Plaintiff Dr. Misquith was subject to multiple adverse employment actions when he was suspended on a pre-textual basis and then suddenly terminated from his employment without cause or explanation, as a trauma surgeon, at St. Mary's Hospital.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).

98. Plaintiff Dr. Misquith's employers treated similarly situated employees, who were not Indian-American and outside of his class, more favorably, by not subjecting them to discipline on pre-textual bases, or sudden termination without cause or explanation.

17

**AS AND FOR THE FOURTH CAUSE OF ACTION – UNLAWFUL DISCHARGE DUE
TO DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF TITLE
VII OF THE CIVIL RIGHTS ACT, 42 U.S.C. §2000e et seq.**

99. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

100. This claim is authorized and instituted pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000e, based upon the discriminatory practices of Defendants St. Mary's Hospital, Palm Beach Trauma Associates, Palm Beach County Healthcare District, and Dr. Robert Borrego.

101. To make out a prima face case of national origin discrimination under Title VII, a plaintiff must show that "(1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably" Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

102. Plaintiff Dr. Misquith was born in India, legally immigrated to the United States and has since become a naturalized United States Citizen.  He therefore belongs to a protected class based upon his national origin under Title VII of the Civil Rights Act.

103. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St. Mary's Hospital for nearly thirty (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

104.  Plaintiff Dr. Misquith was never reprimanded, suspended, nor placed on administrative leave in nearly thirty (30) years of service as a surgeon at St. Mary's Hospital.

105. Plaintiff Dr. Misquith was subject to multiple adverse employment actions when he was suspended on a pre-textual basis and then suddenly terminated from his employment without cause or explanation, as a trauma surgeon, at St. Mary's Hospital. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).

106. Plaintiff Dr. Misquith's employers treated similarly situated employees, who were not Indian-American and outside of his class, more favorably, by not subjecting them to discipline on pre-textual bases, or sudden termination without cause or explanation.


**AND AS AND FOR THE FIFTH CAUSE OF ACTION –UNLAWFUL DISCHARGE DUE TO  DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN, IN VIOLATION OF 42 U.S.C. § 1981**

107. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

108. This claim is authorized and pursuant to 42 U.S.C. § 1981, Equal Rights under the Law, based upon the intentional racial discrimination of Defendants St. Mary's Hospital, Palm Beach County Health Care District, Palm Beach Trauma Associates, and Dr. Robert Borrego,  in the terms and conditions of Plaintiff's employment, causing Plaintiff to be terminated, and suffer substantial injury and damages.

109. "To state a claim under § 1981, a plaintiff must identify an impaired contractual relationship … under which the plaintiff has rights." Kinnon v. Arcoub, Gopman & Associates, Inc., 490 F.3d 886, 890 (11th Cir. 2007); Domino's Pizza, Inc. v. McDonald, 546 U.S. 470 (2006).

110. "The elements of a cause of action under § 1981 are (1) that plaintiff is a member of a racial minority; (2) that defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1270 (11th Cir. 2004).

111. Plaintiff Dr. Misquith is Indian-American, and is therefore a member of a racial minority, and his national origin is from India.

112. The Defendants' intent to discriminate against Dr. Misquith under the Physicians Agreement is evidenced by the fact that other surgeons in the trauma center who were not Indian were not similarly disciplined on a pre textual basis, and/ or suddenly terminated with cause or explanation outside of the hospital's ordinary procedures. In addition, Dr. Misquith was replaced on staff by a white doctor.

**AS AND FOR THE SIXTH CAUSE OF ACTION – UNLAWFUL DISCHARGE DUE TO DISCRIMINATION BASED ON AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT(ADEA)**

113. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

114. This claim is authorized and instituted pursuant to the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621 et seq., based upon Defendants St. Mary's Hospital, Palm Beach County Health Care District, Palm Beach Trauma Associates, and Dr. Borrego's unlawful termination of Plaintiff Dr. Misquith due to his age.

115. "This Court,… uses the framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), to evaluate ADEA claims that are based upon circumstantial evidence of discrimination." Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

116. "To make a prima facie case of age discrimination, the employee must show: (1) he was a member of the protected group between the age of forty and seventy; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged." Liebman v. Metropolitan Life Ins. Co., 808 F.3d 1294, 1298 (11th Cir. 2015).

117. Plaintiff Dr. Misquith was aged sixty (60) years old at the time of his termination in November 2018, and is therefore a member of the protected group between the ages of forty (40) and seventy (70).

118. Plaintiff Dr. Misquith suffered multiple adverse employment actions when he was suspended, for the first time in a career, spanning nearly thirty (30) years, on a pre-textual claim that he failed to complete certain medical records, when the records were, in fact completed. Plaintiff Dr. Misquith was subject to further adverse employment action when his employment was suddenly terminated shortly thereafter. (See Ex. 1, EEOC Charge of Discrimination, Attachments — Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).

119. Following Plaintiff Misquith's termination, upon information and belief, a substantially younger doctor filled his position as a trauma surgeon at St. Mary's Hospital.

120. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St. Mary's Hospital for nearly thirty (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

### AS AND FOR THE SEVENTH CAUSE OF ACTION – INTENTIONAL DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1983

121. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

122. This claim is authorized pursuant to 42 U.S.C. § 1983 for Defendants' constitutional violations and violations of federal law, acting under "color of law" in discriminating against Plaintiff due to his race, age, national origin, disability, and whistleblower status.

123. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, … or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1982.

124. "To state a claim for relief under § 1983, plaintiff must establish that they were deprived of a right secured by the constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263 (11th Cir 2003.).

125. The Palm Beach County Healthcare District is an independent taxing district, chartered by the Legislature of the State of Florida.

126. St. Mary's Medical Center is a private hospital.

127. Dr. Borrego is the director of the trauma center at St. Mary's, and was hired by Palm Beach County Healthcare District to manage the trauma center, and is a principal in Palm Beach Trauma Associates.

128. "Private conduct is fairly attributable only when the State has had some affirmative role, albeit one of encouragement short of compulsion, in the particular conduct underlying a

22

claimant's civil rights grievance." <u>NBC Inc. v. Communications Workers of America</u>, 860 F.2d 1022 (11th Cir. 1988).

129. "To hold private parties as state actors, the court must conclude one of the following conditions is met: (1) state has coerced or at least significantly encouraged the action alleged to violate the constitution ("State Compulsion Test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of if the state ("Public Function Test"); or (3) the state has so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("Nexus/Joint Action Test")." <u>Rayburn v. Hogue</u>, 241 F.3d 1341 (11th Cir. 2001).

130. The Palm Beach County Health Care District is empowered to, "plan, set policy guidelines for, fund, establish, construct, lease, operate, and maintain such health care facilities as shall be necessary for the use of the people of the County;" "[t] provide services and facilities jointly with other public or private health care providers;" "[t]o provide health care services to residents of the County through the utilization of health care facilities not owned and operated by the District;" and "[t]o employ … physicians … and such other employees and agents as may be necessary in its judgment and to fix their compensation." Fla. Stat. ch. 2003-326 (2003).

131. The Palm Beach County Health Care District, in furtherance of its statutory objectives, contracted with St. Mary's Medical Center to provide the space, tools, and equipment for the Palm Beach County Health Care District to set-up a trauma center at St. Mary's.

132. The Palm Beach County Health Care District then, in furtherance of its statutory objectives, reached an agreement with Dr. Robert Borrego and the Palm Beach Trauma

Associates to direct and staff the trauma center the Health Care District opened in St.
Mary's.

133. Here, Defendants St. Mary's Medical Center, Palm Beach Trauma Associates, and Dr.
Borrego are sufficiently intertwined with Defendant Palm Beach County Health Care
District, so as to hold the actions of Defendants St. Mary's Medical Center, Palm Beach
Trauma Associates, and Dr. Borrego as actions of the State of Florida, through the Palm
Beach County Health Care District.

134. Moreover, Plaintiff Dr. Misquith met with Ms. Shariari, counsel to the Defendant Palm
Beach Health Care District twice to complain of the transfer and billing practices of the
trauma center, and subsequently complained to her that his calls were being cut in
retaliation for speaking out.

135. The termination letter was cc'ed to three officials of the Palm Beach County Health Care
District: Darcy Davis, Chief Operating Officer, Belma Andric, Vice President and Chief
Medical Officer, and Sandra Smith, Director of the Trauma Agency and Clinical
Aeromedical Services. .  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex.
A., Letter of Termination).

136. When Defendants terminated Plaintiff's employment due to his disability, race, national
origin, age and whistleblower status, Defendants violated Plaintiff Dr. Misquith's equal
protection rights under the Fourteenth Amendment, his rights guaranteed under Title VII,
and his First Amendment free speech rights which he exercised as a whistleblower.

**AS AND FOR THE EIGHTH CAUSE OF ACTION – UNLAWFUL DISCHARGE DUE TO DISCRIMINATION BASED ON RACE, NATIONAL ORIGIN, AND AGE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT §§760.01 et seq.**

137. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

138. "The general purposes of the Florida Civil Rights Act of 1992 are to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in person dignity…" Florida Civil Rights Act §760.01(2).

139. "It is an unlawful employment practice for an employer to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

140. "The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida Act was patterned after Title VII." Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).

141. "Federal case law interpreting … the ADEA applies to cases arising under the FCRA." Ashkenazi v. South Broward Hosp. Dist., 607 Fed.Appx. 958, 960-61 (11th Cir. 2015) quoting City of Hollywood v. Hogan, 986 So.2d 634, 641 (Fla. 4th DCA 2008).

142. "The Court evaluates a disability discrimination claim under the Florida Civil Rights Act using the same framework as ADA claims." Olson v. Dex Imaging, Inc., 63 F.Supp.3d 1353, 1362 (M.D.Fla.2014); Holly v. Clairson Indus., LLC., 492 F.3d 1247, 1255 (11th Cir. 2007).

143. "A prima facie case of employment discrimination may be established by either: direct evidence of discriminatory intent; statistical analysis showing a pattern of discrimination; or circumstantial evidence meeting the test established in <u>McDonnell Douglas Corp v. Green</u>, 411 U.S. 792 (1973)." <u>City of West Palm Beach v. McCray</u>, 91 So.3d 165, 171 (Fla. 4th DCA).

144. "When a plaintiff seeks to prove discrimination through a disparate treatment theory, the <u>McDonnell Douglas</u> test requires proof that: (1) the plaintiff belongs to a racial minority; (2) the plaintiff was subjected to adverse employment action; (3) similarly-situated employees, outside of the plaintiff's racial minority, were treated more favorably than the plaintiff and (4) the plaintiff was qualified to do the job." <u>Id.</u>; <u>U.S. E.E.O.C. v. Mallinckrodt, Inc.</u>, 590 F.Supp.2d 1371, 1376 (M.D.Fla.2008).

145. Plaintiff Dr. Misquith is Indian-American, and therefore belongs to a racial minority.

146. Plaintiff Dr. Misquith suffered an adverse employment action when he was he was suspended, for the first time in a career, spanning nearly thirty (30) years, on a pre-textual claim that he failed to complete certain medical records, when the records were, in fact completed. Plaintiff Dr. Misquith was subject to further adverse employment action when his employment was suddenly terminated shortly thereafter. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).

147. The Defendants treated similarly situated employees, outside of Plaintiff Dr. Misquith's racial class, more favorably than him. Dr. Misquith was subject to discipline on a pretextual basis, and suddenly terminated without cause or explanation outside of the

hospital's ordinary procedures.  Non-Indian trauma surgeons were not.  In addition, Dr. Misquith was replaced on staff by a white doctor.

148. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St. Mary's Hospital for nearly thirty (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

149. "To establish a prima facie case of age discrimination under the ADEA and the Florida Civil Rights Act, Plaintiff must show that he: (1) was a member of a protected group; (2) was subject to an adverse employment action; (3) was qualified for the position; and (4) was replaced by a younger person." Bentley v. Miami Air International, Inc., 262 F.Supp.3d 1370, 1373-74 (S.D.Fla.2017).

150. Plaintiff Misquith was sixty (60) years old at the time of suspension and termination, and is therefore a member of a protected group.

151. Plaintiff Dr. Misquith suffered an adverse employment action when he was he was suspended, for the first time in a career, spanning nearly thirty (30) years, on a pre-textual claim that he failed to complete certain medical records, when the records were, in fact completed. Plaintiff Dr. Misquith was subject to further adverse employment action when his employment was suddenly terminated shortly thereafter.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018)..

152. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St.

Mary's Hospital for nearly thirty (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

153. Following Plaintiff Misquith's termination, a substantially younger doctor filled his position as a trauma surgeon at St. Mary's Hospital.

154. "Under the controlling law in the Eleventh Circuit, '[t]he burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims.'" Id. Holly, 492 F.3d at 1255. "To establish a case of discrimination under the ADA, 'a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to an unlawful discrimination because of his disability." Id.; Holly, 492 F.3d at 1255.

155. Plaintiff Dr. Misquith is physically disabled due to a chronic heart condition that substantially limits his work and personal life. There is  record of Plaintiff Dr. Misquith's impairment as he has undergone eight (8) heart surgeries, including seven (7) angioplasties performed to restore his heart, one (1) triple bypass surgery, and six (6) stent placements.

156. Plaintiff Dr. Misquith's qualification to do the job for which he was terminated is evidenced by his employment and outstanding performance as a trauma surgeon, at St. Mary's Hospital for nearly thirty (30) years, and further by his graduation from St. John's Medical College, completion of his general surgery residency, procurement of a medical license in Florida, and board certification by the American Board of Surgery.

157. Plaintiff Misquith was discriminated against on account of his disability when after undergoing multiple heart surgeries in one year, and taking the medically required time off to heal and recuperate, he was suspended on a pre-textual basis that he failed to complete

certain medical records, when the records were, in fact completed. Plaintiff was then

notified that his employment would be terminated, a mere three (3) months after his heart

final surgery.

## AS AND FOR THE NINTH CAUSE OF ACTION – RETALIATION UNDER THE FLORIDA CIVIL RIGHTS ACT §§760.01 et seq.

158. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs

of the Complaint as though set forth at length herein, as and against Defendants.

159. "The general purposes of the Florida Civil Rights Act of 1992 are to secure for all

individuals within the state freedom from discrimination because of race, color, religion,

sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect

their interest in person dignity…" Florida Civil Rights Act §760.01(2).

160. "It is an unlawful employment practice for an employer to discharge or to fail or refuse to

hire any individual, or otherwise to discriminate against any individual with respect to

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital

status."

161. "Florida courts follow federal case law when examining Florida Civil Rights Act claims."

Olsonv. Dex Imaging, Inc., 63 F.Supp.3d 1353, 1362 (M.D.Fla.2014), Carter v. Health

Mgmt. Associates, 989 So.2d 1258, 11262 (Fla. 2d. DCA 2008).

162. "To establish a prima facie case of retaliation under the FCRA, the plaintiff must show

that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse

employment action, and (3) there was a causal connection between the protected activity

and the adverse action." Id.

163. "To prevail on [his] ADA retaliation claim, plaintiff must show that: (1) [he] engaged in a statutorily protected expression; (2) [he] suffered an adverse employment action, and (3) there was a causal link between the two." Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016).

164. "The first element may be met by a request for a reasonable accommodation. The third element requires a showing of 'but-for' causation." Id.

165. Plaintiff Dr. Misquith engaged in a statutorily protected expression when he took medical leave to recuperate from heart surgery.

166. Plaintiff Dr. Misquith suffered an adverse employment action when he was suspended shortly after returning from medical leave, for the first time in a career, spanning nearly thirty (30) years, on a pre-textual claim that he had failed to complete certain medical records, when the records were, in fact, completed. Plaintiff Dr. Misquith suffered further adverse employment action when he was suddenly terminated without cause or explanation, two (2) months thereafter.

167. There is a causal relationship between Plaintiff Dr. Misquith's request for reasonable accommodation following life-saving heart surgery, and his suspension and termination.

168. On July 15, 2018, and August 30, 2018, Plaintiff Dr. Misquith had heart surgery, and required leave to recuperate.  On September 5, 2018, Dr. Misquith completed his administrative medical records.  On September 12, 2018, Defendants suddenly suspended Dr. Misquith on the pre-textual claim that he had failed to complete the administrative medical records, even though they had been completed. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).

30

169. Three months after Plaintiff Dr. Misquith's heart surgery, and again without warning, Defendant Dr. Borrego terminated Dr. Misquith effective January 1, 2019, by letter dated November 27, 2018.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. A., Letter of Termination).

170. But for Plaintiff Dr. Misquith's request for medical leave following life-saving heart surgeries, he would not have been subject to adverse employment action.

## AS AND FOR THE TENTH CAUSE OF ACTION – RETALIATION UNDER THE FLORIDA WHISTLEBLOWER ACT (FWA) §448.102

171. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

172. "An employer may not take any retaliatory personnel action against an employee because that employee has provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer or objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fl. Stat. ch. § 448.102(2)(3) (2020).

173. "The Florida Whistle-Blower Act (FWA) is a remedial statute which created a new cause of action designed, "'to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public.'" Bonnafant v. Chico's FAS, Inc., 12 F.Supp.3d 1196, 1200 (M.D.Fla.2014); Arrow Air, Inc. v. Walsh, 45 So.2d 422, 424 (Fla.1994).

174. Generally, retaliation claims under the Florida Whistleblower Act are analyzed in the same manner as Title VII retaliation claims. See Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 950-51 (11th Cir. 2000).

175. "Under the Title VII framework, a plaintiff must establish a prima facie case by proving
that she engaged in a protected activity, she suffered an adverse employment action and
some causal link exists between the protected activity and adverse employment action."
U.S. ex rel. Vargas v. Lackmann Food Service, Inc., 510 F.Supp.2d 957, 968
(M.D.Fla.2007).

176. "With respect to allegations of a violation of Section 448.102(3), the plaintiff must prove
an actual 'violation of a law, rule, or regulation' occurred in order to establish a prima
facie case." Id., quoting White v. Purdue Pharma, Inc., 369 F.Supp.2d 1335, 1339
(M.D.Fla.2005).

177. Plaintiff Dr. Misquith engaged in a statutorily protected activity when he opposed the
potentially unethical and fraudulent transfer protocols that resulted in the double-billing of
patients transferred to St. Mary's emergency room from other hospital emergency rooms.
Plaintiff Dr. Misquith, a trauma surgeon employed with St. Mary's for nearly thirty (30)
years, had a good faith and reasonable basis to believe that the employment practice of
double billing patients is unlawful.

178. Plaintiff  Dr. Misquith suffered an adverse employment action when he was he was
suspended, for the first time in a career, spanning nearly thirty (30) years, on a pre-textual
claim that he failed to complete certain medical records, when the records were, in fact
completed. Plaintiff Dr. Misquith was subject to further adverse employment action when
Defendant Dr. Borrego suddenly terminated him.

179. There is a causal relationship between Plaintiff Dr. Misquith's whistleblowing and his
suspension and termination. Plaintiff Dr. Misquith increased his opposition to Defendants'
transfer protocols in 2018, after being instructed to accept all transfer patients. (See Ex. 1,

EEOC Charge of Discrimination, Attachments --Ex. D – email from Dr. Borrego to Dr. Misquith dated July 4, 2018, and Ex. E – Text correspondence between Dr. Misquith and Dr. Borrego).  Dr. Misquith then met with counsel to the Palm Beach County Health Care District and her outside counsel.  In retaliation for Dr. Misquith blowing the whistle, Dr. Borrego cut the number of calls Dr. Misquith would be scheduled for. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. E, Text correspondence between Dr. Misquith and Dr. Borrego).

180. After his calls were cut, Plaintiff Dr. Misquith again reached out to Palm Beach County Health Care District counsel Ms. Shariari, and to one of the outside counsel attorneys who had been in the meeting of July 26, 2018, for the name of a "whistleblower" attorney.

181.  In further retaliation, Defendants suspended Dr. Misquith on September 12, 2018, on a pre-textual claim that he had failed to complete certain administrative medical records. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. G, Email between Dr. Misquith and Dr. Borrego dated September 12, 2018).  Dr. Misquith had been on leave for heart surgery on August 30, 2018, and, in fact, had completed the medical records on September 5, 2018. Id.

182. Three months after Plaintiff Dr. Misquith's heart surgery, and again without warning, Defendant Dr. Borrego terminated Dr. Misquith effective January 1, 2019, by letter dated November 27, 2018.  (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. A., Letter of Termination).

183. But for Plaintiff Dr. Misquith's reporting of the potentially unethical and fraudulent transfer and billing protocols, he would not have been subject to adverse employment action.

### AS AND FOR THE ELEVENTH CAUSE OF ACTION – BREACH OF CONTRACT

184. Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

185. This claim is authorized and instituted pursuant to Florida state law, based upon the actions of Defendants St. Mary's, Palm Beach County Health Care District, Palm Beach Trauma Associates, and Dr. Borrego. Specifically, Plaintiff complains Defendants breached the Trauma Physician Agreement by wrongly terminating Plaintiff without cause or explanation, and without giving him notice at least ninety (90) days prior to the effective date of such termination, causing substantial injury and damages. (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. B – Trauma Physician Agreement).

186. "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009).

187. Plaintiff Dr. Misquith had an automatically renewable one (1) year term contract with the Palm Beach Health Care District to provide physician trauma services.  The term agreement was, "…automatically renewed for successive one year renewal terms unless the Agreement is sooner terminated in accordance with the provisions hereof."   (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. B – Trauma Physician Agreement, Section 6.1, p.7.)  The contract had been renewed every year since 1999.

188. Defendants materially breached the contract when they terminated Plaintiff Dr. Misquith without giving cause or explanation, with less than ninety (90) days' notice. (See Ex. 1,

EEOC Charge of Discrimination, Attachments –- Ex. A., Letter of Termination).  The date

of termination was November 27, 2018 with an effective date of January 1, 2019. Id.

189. The Trauma Physician Agreement provides that in the case of Termination Without

Cause, "This Agreement may be terminated by either party, without cause, by notifying

the other party, in writing, at least Ninety (90) days prior to the effective date of such

termination." (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. B –

Trauma Physician Agreement, Section 6.4, p. 7).  Dr. Misquith never received a cause or

explanation for termination from Dr. Borrego or any of the other Defendants, all after

nearly thirty years of outstanding service to the hospital.

190.    Plaintiff Dr. Misquith suffered considerable damages resulting from the Defendants'

breach of contract.  Because he had exclusively practiced with St. Mary's trauma center since

2000 and had no private clients or a private doctor's office, and because of his age of sixty

(60) years old and physical disability, Dr. Misquith's medical career was cut short at its

height, he lost years of substantial income, and he was forced to retire.

**AS AND FOR THE TWELFTH CAUSE OF ACTION – BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING**

191. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs

of the Complaint as though set forth at length herein, as and against Defendants.

192. This Court has recognized the existence of a covenant of good faith and fair dealing in

every contract. Fernandez v. Vazquez, 397 So. 2d 1171 (Fla. 3d DCA 1981). Good faith

means honesty, in fact, in the conduct of contractual relations. Harrison Land

Development, Inc. v. R & H Holding Co., 518 So. 2d 353 (Fla. 4th DCA 1988). An

established contract principle is that a party's good faith cooperation is an implied

condition precedent to performance of the contract; where that cooperation is withheld, the

recalcitrant party is estopped from availing himself of his own wrong doing. <u>Seabreeze Restaurant, Inc. v. Paumgardhen</u>, 639 So. 2d 69, 71 (Fla. 2d DCA 1994).

193. This Court requires an underlying contractual provision that the defendant is alleged to have breached to maintain a claim for breach of the covenant of good faith and fair dealing. <u>Cf</u>. Coira v. Florida Medical Ass'n., Inc., 429 So. 2d 23, 23-24 (Fla. 3d DCA 1983).

194. Specifically, Plaintiff Dr. Misquith complaints that Defendants breached the covenant of good faith and fair dealing implied in the Trauma Physician Agreement, at Section 6.4 on page seven (7) of the contract, Termination Without Cause, "This Agreement may be terminated by either party, without cause, by notifying the other party, in writing, at least Ninety (90) days prior to the effective date of such termination." (See Ex. 1, EEOC Charge of Discrimination, Attachments –- Ex. B – Trauma Physician Agreement, Section 6.4, p. 7). Dr. Misquith never received a cause or explanation for termination from Dr. Borrego or any of the other Defendants, all after nearly thirty years of outstanding service to the hospital.

195. When the Defendants suddenly terminated Plaintiff Dr. Misquith without cause, and with less than ninety (90) days' notice, their actions caused substantial injury and damages to the Plaintiff.

**WHEREFORE**, Plaintiff, Dr. Eugene Misquith, demands judgment against the Defendants, Palm Beach County Health Care District, St. Mary's Medical Center, Dr. Robert Borrego and Palm Beach Trauma Associates, jointly and severally, in the amount of five million dollars ($5,000.000.00) for all compensatory, and punitive damages, as set forth above.  It is further requested that this Court also grant reasonable attorneys' fees, and the costs and disbursements of this action, and for such other and further relief as to this Court may seem just and proper.

Dated: July 10, 2020

Respectfully Submitted,

/s/ Mario G. Menocal
Mario G. Menocal, Esq., of-counsel
Florida Bar No.: 99048
Lally & Misir, LLP
Attorneys for Eugene Misquith
220 Old Country Road
Mineola, NY 11501
Tel (516) 741-2666

Deborah N. Misir, Esq.
Grant M. Lally, Esq.
Lally & Misir, LLP
220 Old Country Road
Mineola, NY 11501
Tel (516) 741-2666
*Counsel for the Plaintiff*