UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-CV-81123- AMC

DR. EUGENE MISQUITH,

        Plaintiff,

vs.

PALM BEACH COUNTY HEALTH CARE DISTRICT,
ST. MARY'S MEDICAL CENTER,
ROBERT BORREGO, and
PALM BEACH TRAUMA ASSOCIATES,

        Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF No. 86)

In his verified Second Amended Complaint (SAC), Plaintiff, Dr. Eugene Misquith, a sexagenarian Indian-American male with a history of heart problems, sues four defendants for employment discrimination and retaliation under both Federal and State law. He also brings common law contract-based claims. The Defendants jointly move to dismiss all counts with prejudice. This matter was referred to me by the Honorable Aileen M. Cannon for a Report and Recommendation. ECF No. 88. For the reasons stated, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

# I.   PROCEDURAL HISTORY

Dr. Misquith filed this lawsuit on July 13, 2020. ECF No. 1. In a detailed 44-page motion, all four defendants moved to dismiss the original Complaint. ECF No. 26. Rather than responding to the motion, Dr. Misquith filed a First Amended Complaint. ECF No. 39. The defendants moved to dismiss in a 35-page motion that again pointed out potential issues with Dr. Misquith's legal theories. ECF No. 53. After full briefing, Magistrate Judge Brannon recommended dismissing the First Amended Complaint as a shotgun pleading. ECF No. 65. Judge Cannon adopted this recommendation, dismissed the First Amended Complaint without prejudice, gave Dr. Misquith "**one final** opportunity to file an amended complaint" and instructed that the "second amended complaint must avoid incorporating into successive counts all preceding allegations and counts; must clearly identify the particular factual allegations relevant to each count; and must specify in explicit terms the exact cause of action in each count and against whom each cause of action is alleged." ECF No. 70 at 2 (emphasis in original).

Dr. Misquith filed a verified Second Amended Complaint on June 16, 2020. ECF No. 73. It is 90 pages long, comprises 405 separately-numbered paragraphs, and contains over 350 pages of exhibits. *Id*. It alleges claims under (1) the American with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Florida Civil Rights Act ("FCRA"), 42 U.S.C. § 1981, and the Florida Whistleblower Act ("FWA") (collectively "the Anti-Discrimination Statutes"); (2) 42 U.S.C. § 1983; and (3) Florida common law for

breach of contract. Defendants once again move to dismiss, raising the same legal arguments asserted in their prior motions. ECF No. 86.

I have reviewed the Motion to Dismiss, the Response, and the Reply. ECF Nos. 90, 93. I am fully advised and this matter is ripe for decision.

## II.    DISCUSSION

This Report and Recommendation does not address every argument made by Defendants in support of their Rule 12(b)(6) motion. This analysis is unnecessary given the multiple grounds discussed below that warrant dismissal of the SAC.[1]

1. *Motion to Dismiss Under Rule 12(b)(6)*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this Rule 8 pleading requirements, a claim must provide the defendant fair notice of

---

[1] I note that Defendants make several arguments for dismissal that are not grounded in the SAC. They argue that Dr. Misquith has not satisfied a condition precedent to a Title VII claim against the Health Care District because he has not obtained a Right to Sue letter from the EEOC. ECF No. 86 at 29–30. But, the SAC does not allege a Title VII claim against the Health Care District. At most, it seeks to hold other defendants liable for the actions of the Health Care District.

Similarly, Defendant argue that Dr. Borrego, Palm Beach Trauma Associates ("PBTA"), and St. Mary's Medical Center were not parties to the Trauma Physician Agreement that forms the basis of the breach of contract claim in Count XIX. ECF No. 86 at 40–42. That Count is only against the Health Care District, although it seeks to impute liability based on actions by the other defendants.

Finally, they argue that the Health Care District cannot be sued under the FWA. ECF No. 86 at 35. But, the FWA counts are against St. Mary's, Dr. Borrego, and PBTA, not the Health Care District.

plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.,* 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U. S. at 678 (*quoting Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

4

liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.,* 2018 WL 3360754, at *6 (S. D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

2. *Shotgun Pleading*

In addition to Rule 8(a)(2)'s requirement that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Federal Rule of Civil Procedure 10(b) states in pertinent part, "If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense." "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach County Sheriff's Office,* 792 F.3d 1313, 1320 (11th Cir. 2015). Failure to cure a shotgun

5

pleading after having notice of its defects can result in dismissal with prejudice. *Jackson v. Bank of America, N.A.,* 898 F.3d 1348, 1357–58 (11th Cir. 2018) (trial court does not abuse its discretion in dismissing case with prejudice when party fails to cure shotgun pleading after fair notice of pleading's defects and a meaningful opportunity to correct them.).

In *Weiland*, the Court of Appeals noted "four rough types or categories of shotgun pleadings." *Id.* at 1321–23. As relevant here, the categories included (1) the "mortal sin" of a later count of a complaint incorporating by reference an earlier count, (2) the "venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," and (3) "the sin of not separating into a different count each cause of action or claim for relief." *Id.* The common theme among all shotgun pleadings "is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Defendants renew their argument that the Second Amended Complaint is a shotgun pleading. As an initial matter, the SAC complies with Judge Cannon's instruction to not incorporate all preceding allegations and counts into successive counts. Each count also identifies the specific facts relevant to that count. The title of each count identifies the cause of action and the named defendant(s). Unfortunately, the SAC is replete with irrelevant facts, statements of legal principles, and citations to cases and statutes.

Defendants argue that the individual counts still fail to clearly identify the

6

named defendant. One reason, they assert, is that the causes of action are based on a "joint employment" theory. They argue that the joint employment theory creates ambiguity about which defendant(s) are named in the count. I disagree. The underlying joint employment theory does not convert an individual count against one named defendant into an impermissible shotgun pleading; rather, it merely makes clear that the count may seek to hold the named defendant liable for acts committed by other unnamed defendants.

Defendants next allege that Counts XIX-XXI are shotgun pleadings because they are pled "in the alternative to the employment claims previously outlined, and pursuant to FRCP 8(d)(2)." ¶¶ 369 (Count XIX against Health Care District), 385 (Count XX against Health Care District), and 392 (Count XXI against St. Mary's Medical Center).[2] Defendants assert that this language brings the unnamed alleged joint employers into the respective counts. Defendants read too much into this language. It appears merely to be Dr. Misquith's attempt to invoke this Court's supplemental jurisdiction over non-diverse Florida law claims.

Defendants also note that the SAC asks that they be held jointly and severally liable for damages to Dr. Misquith. ¶ 89. Again, this allegation does not create ambiguity about which defendant(s) are named in each count of the SAC. Whether it

_____

[2] Paragraphs of the SAC, ECF No. 73, will be cited as "¶."  Citations to the pleadings will reference the page number assigned by the CM/ECF docketing system, not the page number inserted by the author.

is legally proper to seek joint and several damages in this case can be addressed at a later phase of the litigation.

In sum, the SAC is far from a model of a "short and plain statement" of Dr. Misquith's claims. Nevertheless, it now sufficiently identifies which legal causes of action are being asserted against each defendant and the factual basis for each cause of action. It puts the Defendants on adequate notice to assert defenses and litigate this case. The SAC should not be dismissed as a shotgun pleading.

3. *Substantive Counts*[3]

### a.      Number of Employees

Defendants correctly argue that Counts I-VIII, X, XI, and XIII-XVIII must all be dismissed because the SAC fails to allege a necessary element of the causes of action – that the putative employer had a required minimum number of employees. The Anti-Discrimination Statutes prohibit certain discriminatory actions by an "employer." *See, e.g.,* 42 U.S.C. § 2000e-2(a)(1). "Employer" is a defined statutory term. One component of the statutory definition is that the putative "employer" have a minimum number of employees. Title VII, the ADA, and the FCRA cover only employers with 15 or more employees, 42 U.S.C. § 2000e-2(b), 42 U.S.C. § 12111(5),

---

[3] For purposes of this section, I assume without deciding that Dr. Misquith is an "employee" of all Defendants for purposes of bringing an action under the Anti-Discrimination Statutes.

Fl. Stat. § 760.02(7); the ADEA covers only employers with twenty or more employees. 29 U.S.C. § 630(b); the FWA covers only employers with ten or more employees. Fl. Stat.§ 448.101(3). The number of employees is a substantive element of each cause of action. *See, e.g., Arbaugh v. Y&H Corp.,* 546 U.S. 500, 516 (2006) (Title VII); *Garcia v. Copenhaver, Bell & Assoc., M. D.'s P.A.,* 104 F.3d 1256 (11th Cir. 1997) (ADEA); *Eaton v. Nat'l Older Worker Career Ctr.*, 7:20-CV-00035-LSC, 2020 WL 6585605, at *3 (N. D. Ala. Nov. 10, 2020) (ADA).

The SAC fails to allege that any Defendant is a statutory "employer" because it lacks facts entitled to the assumption of truth that establish the minimum number of employees. For St. Mary's, Count I alleges, "Upon information and belief, Defendant St. Mary's Medical Center has at least fifteen (15) employees, and is therefore a covered employer under the ADA." ¶ 120. This allegation is restated in Counts XIII and XV, *see* ¶¶ 265,308, but is neither restated nor incorporated by reference into Counts III, V, VII, X. Count XVII alleges, "Upon information and belief, Defendant St. Mary's Medical Center has at least ten (10) employees and is therefore covered employers under the FWA." ¶ 341.

For Dr. Borrego and PBTA, the SAC alleges in Counts II, IV, VI, VIII, XI, XIV, XVI, and XVIII, "Defendants' [sic] Dr. Borrego and Palm Beach Trauma Associates have claimed that they have only two (2) employees. To the extent that this Court determines that Defendants Dr. Borrego and Palm Beach Trauma Associates have fifteen (15) or more employees, we would also respectfully allege that they are covered employees [sic] under the ADA." ¶¶133, 153, 179, 201, 235, 289, 320, 325, 357.

In his Response to the Motion to Dismiss, Dr. Misquith concedes that he has not yet pled the proper number of employees. ECF No. 90 at 13–14. He asserts that "upon information and belief" these requirements have been met. He further asserts he "has strong reason" to believe that PBTA has at least 15 employees. He argues that he expects to obtain the necessary evidence during discovery, so "[t]his is an issue that should be resolved at a motion for summary judgment." *Id.* at 14.

The threshold *Iqbal/Twombly* pleading standard cannot be deferred. "Post-filing discovery is not a substitute for pre-filing investigation and factual development. A Court need not defer ruling on a motion to dismiss 'in order to allow the plaintiff to look for what the plaintiff should have had – but did not – before coming through the courthouse doors.'" *Alvarez Galvez v. Fanjul Corp.,* 20-80123-CIV, 2021 WL 4093469, at *7 (S. D. Fla. Aug. 4, 2021) (J. Reinhart) (quoting *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007))*, report and recommendation adopted sub nom. Galvez v. Fanjul Corp.,* 2021 WL 3878322 (S.D. Fla. Aug. 31, 2021) (J. Ruiz). Because the SAC fails to plausibly allege the predicate number of employees – a required element of Title VII, the ADA, the ADEA, the FCRA, and the FWA – Counts I-VII, X, XI, and XIII-XVIII fail to state a claim upon which relief can be granted and therefore must be dismissed under Rule 12(b)(6).

Dr. Misquith argues that his Title VII claim (Count VI) can survive against PBTA and Dr. Borrego because "the Eleventh Circuit has held that Title VII extends to the situation in which a defendant controls and has interfered with an individual's employment relationship with a third party." ECF No. 90 at 14, 16 (citing *Scott v.*

10

*Sarasota Doctors Hospital, Inc.,* 145 F. Supp. 3d 1114, 1124 (11ᵗʰ Cir. 2015)); *see also* SAC ¶ 167 (citing *Scott* and *Pardazi v. Cullman Med. Ctr.,* 838 F.2d 1155, 1156 (11ᵗʰ Cir. 1988). The authority cited for this proposition is distinguishable. It does not discuss curing a deficiency in the number of employees alleged in the complaint. Instead, it addresses whether Title VII applies when a defendant-employer interferes with a plaintiff's employment relationship with a third party. *Pardazi,* 838 F.2d at 1156; *accord Scott,* 145 F. Supp. 3d at 1124 (Title VII extends to "rights and obligations . . . beyond the immediate employer-employee relationship."). Here, Dr. Misquith has not alleged that *any* defendant is an "employer" for purposes of the Anti-Discrimination Statutes.

On this basis, alone, Counts I-VIII, X, XI, and XIII-XVIII must be dismissed. I nevertheless will address other independent grounds to dismiss these Counts.

### b. Dr. Borrego as an Individual Defendant

Dr. Borrego correctly argues that Counts II, IV, VI, VIII, XI, XIV, XVI, and XVIII against him, individually, must be dismissed. The Anti-Discrimination Statutes authorize claims against employers. Title VII defines an "employer" to include "one or more individuals" with 15 or more employees. But, a person acting individually – not as an employer – cannot be liable under these laws. *See Albra v. Advan, Inc.,* 490 F.3d 826, 828 (11ᵗʰ Cir. 2007) (individuals cannot be liable for violating the ADA's anti-retaliation or anti-discrimination provisions.); *Mason v. Stallings,* 82 F.3d 1007, 1009 (11ᵗʰ Cir. 1996) (no individual liability under Title VII, ADEA, or ADA); Fl. Stat. § 448.102(3) ("An employer may not take any retaliatory

11

action against [a whistleblower].").  Dr. Borrego argues that the SAC is trying to sue him as an individual.  ECF No. 86 at 21–22. Dr. Misquith responds, "Plaintiff is not suing Dr. Borrego as an officer or employee of a separate entity, but as an employer himself."  ECF No. 90 at 15.

As Defendants point out in their Reply, there are no factual allegations in the SAC that Dr. Borrego, in his individual capacity, was Dr. Misquith's employer. ECF No. 93 at 3–4. At best, the SAC alleges "upon information and belief, Defendant Palm Beach Trauma Associates is owned and controlled by Dr. Borrego and has served as his alter ego, and management vehicle to manage Dr. Misquith and other doctors in St. Mary's trauma center."  ¶ 13. This allegation is not entitled to the assumption of truth for at least two reasons. First, it is based on information and belief. Second, the reference to an alter ego is a factually unsupported legal conclusion.

Dr. Misquith argues that Dr. Borrego nevertheless can be an "employer" under the Anti-Discrimination Statutes because he was the agent of Dr. Misquith's corporate employer(s). ECF No. 90 at 15–16. He notes that the definition of "employer" includes agents of persons otherwise meeting the definition. The Eleventh Circuit rejected this precise argument in *Mason*. *See* 82 F.3d at 1009 (" 'agent' language was included [in the definition of 'employer'] to ensure *respondeat superior* liability of the employer for acts of its agents.").

Finally, as discussed above, even if the SAC were attempting to sue Dr. Borrego as an employer, it fails to allege that he employed enough people to implicate the Anti-Discrimination Statutes.

12

For all these reasons, all counts against Dr. Borrego should be dismissed.

### c.  The Discrimination Claims

The SAC alleges federal and state law claims for discrimination based on disability, age, race, and national origin.  All of the Anti-Discrimination Statutes have the same structure:  an employer cannot take an adverse employment action against an employee who falls within a protected category (e.g., disability, race, gender, age, whistleblower) if the adverse employment action is causally connected to the employee's protected status.

A plaintiff can plead an intentional discrimination claim in a variety of ways. One "is by navigating the now-familiar three-part burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Lewis v. Union City, Ga.*, 918 F.3d 1213, 1217 (11th Cir. 2019) ("*Lewis I*") (*McDonald Douglas* applies to Title VII and § 1981); *accord Schultz v. Royal Caribbean Cruises, Ltd.,* 465 F. Supp. 3d 1232, 1265–68 (S. D. Fla. 2020) (J. Torres) (same for ADA); *Liebman v. Metropolitan Life Ins. Co.,* 808 F.3d 1294, 1298 (11th Cir. 2015) (same for ADEA); *White v. Purdue Pharma, Inc.,* 369 F. Supp. 2d 1335, 1338 (M.D. Fla. 2005) (same for FWA); *Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII."). Applying this framework at the Rule 12(b)(6) stage, a plaintiff must allege a *prima facie* case of discrimination by pleading facts plausibly showing that (1) he belongs to a protected class, (2) he was subjected to an adverse

13

employment action, (3) he was qualified to perform the job in question, and (4) his employer treated "similarly situated" employees outside his class more favorably. *Lewis I* at 1220–21. Where a plaintiff attempts to satisfy his burden through comparator evidence, he must show that he and the comparators are "similarly situated in all material respects." *Id.* at 1226.

Another way of pleading intentional discrimination is through a "convincing mosaic" of circumstantial evidence. *Lewis v. Union City, Ga.,* 934 F.3d 1169, 1185 (11ᵗʰ Cir. 2019) ("*Lewis II*"); *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis II,* 934 F.3d at 1185 (citations omitted).

The ADEA and § 1981 require more stringent proof of a causal connection – the disparate treatment based on race or age (respectively) must be the "but for" cause of the adverse employment action, not merely a motivating factor. *Comcast Corp. v. Nat'l Assoc. of African-American-Owned Media,* 140 S. Ct. 1009 (§ 1981); *Gross v. FBL Financial Services, Inc.,* 557 U.S 167 (2009) (ADEA). Here, too, a plaintiff can meet his burden by showing "either a similarly situated comparator who was not treated similarly under similar circumstances, or a 'convincing mosaic' of circumstantial evidence suggesting he was terminated for discriminatory reasons." *See Perry v. Schumacher Grp. of Louisiana*, No: 2:13-cv-36-FtM-29DNF, 2020 WL 3971937, at *7

14

(quoting *Biggers v. Koch Foods of Alabama, LLC*, 2020 WL 2312033, at *5 (M. D. Ala. May 8, 2020)).

Defendants argue that Counts I, II, V, VI-XI, and XIII-XIV must be dismissed because the SAC fails to plead a plausible claim of *prima facie* discrimination. ECF No. 86 at 33–34. Dr. Misquith responds that the SAC alleges "that he was terminated in a hasty, suspicious, and unusual fashion without explanation [and that] he was replaced by an employee who was not a member of the four protected classes to which [Dr. Misquith] belongs." ECF No. 90 at 25–27.

<u>ADA Discrimination</u>

Counts I and II allege Dr. Misquith's employment termination was "motivated by unlawful discrimination based upon Dr. Misquith's disability and periodic need for time off to recuperate from surgery." ¶¶ 117, 130. Counts II and III do not contain enough facts to support a plausible inference of discriminatory motive. Most notably, they lack any allegations about similarly-situated comparators. The sole allegation of discriminatory motive is:

- "Plaintiff Dr. Misquith was discriminated against on account of his disability, when the Defendant Dr. Borrego, cut his calls, suspended him on a pre-textual and false claim that he had not completed medical recordkeeping while recuperating from heart surgery, and then terminated him, without cause or explanation, three months after he underwent heart surgery for the second time in a year and required medical leave to rest and recuperate." ¶¶ 128, 141.

15

These facts are not sufficient to suggest that discriminatory motive was more likely that a lawful alternative explanation.  In sum, any inference of discriminatory motive is too speculative to rise to the level of a plausible claim.

<u>Title VII and FCRA Race Discrimination</u>

Counts V, VI, VII, and VIII allege discrimination based on race and national origin. They each contain the following identical allegations:

- "Plaintiff Dr. Misquith's employers treated similarly situated employees, who were not of Indian national origin and outside of his class, more favorably, by not subjecting them to discipline on pre-textual bases, or sudden termination of privileges without cause or explanation, or due process under St. Mary's Medical Staff Bylaws."  ¶¶ 172, 186, 196, 207.

- "For example, upon information and belief, Dr. Borrego, who is Cuban-American, received his full due process rights under St. Mary's Bylaws, when he was investigated and suspended in 1999, for allowing another doctor to perform a surgery at St. Mary's without the requisite training or privileges leading to the death of the patient."  ¶¶ 173, 187, 197, 208.

- "In addition, upon information and belief, on or about 2009, Dr. Borrego terminated a Dr. Orlando Morejon, a Cuban-American trauma center doctor, and provided him with three (3) months' notice and his due process rights under St. Mary's Bylaws. In contrast, Dr. Borrego

16

provided Dr. Misquith with approximately one (1) month notice of termination and no due process as required under the St. Mary's Bylaws and the State of Florida Department of Health Trauma Standards." ¶¶ 174, 188, 198, 209.

These allegations are insufficient to plead a *prima facie* case of disparate treatment based on race or national origin. The first allegation is a formulaic, conclusory statement of the law without factual support. The latter two statements are made "upon information and belief" and therefore are not entitled to the assumption of truth. Moreover, even if accepted as true, they do not raise a plausible claim that Dr. Borrego and Dr. Morejon were similarly situated in all material respects to Dr. Misquith. They are not adequate comparators for purposes of the *McDonald Douglas* analysis, nor do these allegations present a convincing mosaic of discriminatory intent.

### 42 U.S.C. §1981 Race Discrimination

Count IX alleges discrimination in violation of 42 U.S.C. §1981 because "Dr. Misquith is Indian-American, and is therefore a member of a racial minority." ¶ 213.[4] The relevant allegations of intentional discrimination are:

---

[4] The parties dispute whether being "Indian-American" is a cognizable racial classification for purposes of § 1981. *Compare* ECF No. 86 at 34–35 *with* ECF No. 90 at 26–27. Because Count IX fails to state a claim for other reasons, I need not resolve this issue. *But see United States v. Brooks,* 723 Fed. Appx. 671, 675–76 (11th Cir. 2018) (treating Indian-American status as a racial classification for purposes of a *Batson* challenge).

- "The Defendant St. Mary's Medical Center's intent to discriminate against Dr. Misquith is evidenced by the fact that other trauma surgeons in the St. Mary's trauma center, who were not Indian-American were not similarly disciplined on a pre-textual basis, and/or suddenly terminated without cause or explanation outside of the hospital's Bylaws and ordinary procedures." ¶ 214

- "For example, upon information and belief, Dr. Borrego, who is Cuban-American, received his full due process rights under St. Mary's Bylaws, when he was investigated and suspended in 1999, for allowing another doctor to perform a surgery at St. Mary's without the requisite training or privileges leading to the death of the patient." ¶ 215

- "In addition, upon information and belief, on or about 2009, Dr. Borrego terminated a Dr. Orlando Morejon, a Cuban-American trauma center doctor, and provided him with three (3) months' notice and his due process rights under St. Mary's Bylaws. In contrast, Dr. Borrego provided Dr. Misquith with approximately one (1) month notice of termination and no due process as required under the St. Mary's Bylaws and the State of Florida Department of Health Trauma Standards. Finally, upon information and belief, Dr. Misquith was replaced on the trauma staff by a non-Indian doctor." ¶ 216.

For the same reasons discussed above for Counts V-VIII, these allegations do not allege a plausible claim that Dr. Misquith's race was the but-for cause of any adverse

employment action, so Count IX must be dismissed.

<u>Age Discrimination</u>

Counts X and XI seek to establish age discrimination under the ADEA by circumstantial evidence. ¶ 221. As such, the *McDonald Douglas* framework applies. *Liebman v. Metropolitan Life Ins. Co.,* 808 F.3d 1294, 1298 (11th Cir. 2015). Applying this framework to the ADEA, a plaintiff must plausibly allege (1) he was between the ages of 40 and 70, (2) he was subject to an adverse employment action, (3) a substantially younger person filled the position from which he was discharged, and (4) he was qualified to perform the job from which he was discharged. *Id.*

Counts X and XI allege only, "Following Plaintiff Misquith's termination, upon information and belief, a substantially younger doctor filled his position as a trauma surgeon at St. Mary's Medical Center." ¶¶ 228, 239. These allegations are not entitled to the assumption of truth, so they fail to allege a plausible claim that Dr. Misquith's age was the but-for cause of any adverse employment action. For this reason, Counts X and XI must be dismissed.

<u>FCRA Race, Age, Disability, and National Origin Discrimination</u>

Counts XIII and XIV assert discrimination based on race, national origin, age, and disability, in violation of Florida law. They essentially restate the same legal theories stated in Counts I, II and V-XI. In relevant part, they allege:

- "The Defendants treated similarly situated employees, outside of Plaintiff Dr. Misquith's racial class, more favorably than him. Dr. Misquith was subject to discipline on a pre-textual basis, and suddenly

terminated without cause or explanation outside of the hospital's ordinary procedures. Non-Indian trauma surgeons were not. In addition, Dr. Misquith was replaced on staff by a white doctor." ¶¶ 269, 293

- "Following Plaintiff Misquith's termination, upon information and belief, a substantially younger doctor filled his position as a trauma surgeon at St. Mary's Medical Center." ¶¶ 275, 299.

- "Plaintiff Misquith was discriminated against on account of his disability when after undergoing multiple heart surgeries in one year, and taking the medically required time off to heal and recuperate, he was suspended on a pre-textual basis that he failed to complete certain medical records, when the records were, in fact completed. Plaintiff was then notified that his trauma surgery privileges were terminated, a mere three (3) months after his heart final surgery." ¶ 279.

These state law claims fail for the same reasons as the corresponding federal claims.

### d.  42 U.S.C. § 1983

Count XII alleges that the Health Care District, acting under color of law, terminated Dr. Misquith's employment based on age, race, national origin, disability, and whistleblower status, all in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, and Title VII. ¶¶ 242,

255.[5]  The Health Care District argues that (1) the SAC fails to plausibly allege that the actions allegedly taken against Dr. Misquith were pursuant to a municipal policy, (2) a §1983 claim cannot be predicated on a violation of Title VII, (3) the First Amendment was not implicated because Dr. Misquith was not speaking about a matter of public concern, (4) the SAC fails to plausible allege any action taken by the Health Care District against Dr. Misquith, and (5) age discrimination cannot be the basis for a § 1983 action.  ECF No. 86 at 35–40.

A municipal government entity can be liable under § 1983 only if an official local-government policy was the "moving force" that "actually caused" the plaintiff's constitutional injury. *Sosa v. Martin County, Florida*, 20-12781, 2021 WL 4259153, at *15 (11th Cir. Sept. 20, 2021). A municipal entity cannot be found liable on a *respondeat superior* theory. *Underwood v. City of Bessemer*, 19-13992, 2021 WL 3923153, at *11 (11th Cir. Sept. 2, 2021). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Municipal liability may arise in the termination context 'provided that the decisionmaker possesses final authority to

---

[5] Count XII is titled "Intentional Discrimination in Violation of 42 U.S.C. § 1983 by Palm Beach Health Care District."  ECF No. 73 at 56. It seeks to hold the Health Care District liable for actions of Dr. Borrego, St. Mary's and PBTA. ¶ 251. But it does not seek to hold the other Defendants directly liable under § 1983.

establish municipal policy with respect to the action ordered.' " *Gilroy v. Baldwin,* 843 Fed. Appx. 194, 197 (11ᵗʰ Cir. 2021).

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386 (1989). Here, viewing the SAC in the light most favorable to Dr. Misquith, the allegedly unconstitutional action taken against him was Dr. Borrego's decision to remove him from the trauma call coverage roster. *E.g.,* ¶ 254 (citing ECF No. 73-3). There is no allegation that this action was part of a formal policy or part of a persistent and widespread pattern of behavior by the Health Care District. Nor does the SAC plausibly plead that Dr. Borrego had final authority to establish policy for the Health Care District.[6]  Therefore, the SAC fails to satisfy § 1983's threshold requirement of a municipal policy. Count XII should be dismissed with prejudice on this basis.[7]

---

[6] Dr. Misquith's Response does not address whether the termination of his employment was part of a municipal policy. Therefore, he has implicitly conceded this issue.

[7] Because the lack of a municipal policy is fatal to Dr. Misquith's § 1983 claim, I do not address defendants' remaining arguments. I do note, however, that Count XII improperly alleges § 1983 liability arising from a non-constitutional violation of Title VII. Section 1983 creates liability only for constitutional violations. In some circumstances, the same conduct may violate both an Anti-Discrimination Statute and the Constitution; there, the plaintiff may pursue concurrent actions under the Anti-Discrimination Statute and §1983. But, § 1983 does not provide a remedy for a violation of an Anti-Discrimination Statute that does not rise to the level of a

### e.   Common Law Claims

I recommend that the District Court exercise its discretion to decline to exercise subject matter jurisdiction over Counts XIX-XXI. These Counts should be dismissed without prejudice.

Once a plaintiff properly invokes this Court's federal question or diversity jurisdiction, the court "may exercise supplemental jurisdiction over all other claims that are so related to that claim that they form part of the same case or controversy." 28 U. S. C. § 1367(a). State law claims are deemed to be part of the same case or controversy as a federal claim if they "'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding." *People by Abrams v. Terry*, 45 F. 3d 17, 23 n. 7 (2d Cir. 1995) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Trial courts are given broad discretion in deciding whether to exercise supplemental jurisdiction because they are in the "best position to weigh the competing interests set forth in 28 U. S. C. § 1367." *Morgan v. Christensen*, 582 F. App'x 806, 808 (11th Cir. 2014).

---

constitutional violation. See *Williams v. Pennsylvania Human Relations Comm'n,* 870 F.3d 294, 300 & n 34 (3d Cir. 2017) (Plaintiff "may not seek damages . . . under § 1983 for statutory violations of either Title VII or the ADA, standing alone."). In sum, as the Fifth Circuit has explained, "Title VII *is* the exclusive remedy for a violation of its own terms. But when a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII." *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989) (emphasis in original). Here, there cannot be § 1983 liability based solely on a violation of Dr. Misquith's Title VII rights.

The supplemental jurisdiction statute describes instances when the District Court should decline to exercise supplemental jurisdiction because: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U. S. C. § 1367(c). The Court's discretion is also guided by the factors of judicial economy, convenience, fairness, and comity. *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F. 3d 595, 601 (5th Cir. 2009).

As the Eleventh Circuit has explained, when all federal claims are dismissed prior to trial, Supreme Court precedent "strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414, 428 (11th Cir. 1984) (citing *Gibbs,* 383 U.S. at 726). *See also, e.g., Page v. Hicks,* 773 Fed. Appx. 514, 517 n. 2 (11th Cir. 2019) (trial court properly dismissed state law claims without prejudice after dismissing all federal claims) (citing *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1088–89 (11th Cir. 2004)).  That situation exists here, so the common law claims should be dismissed without prejudice.

## III.    CONCLUSION AND RECOMMENDATION

In her Order dismissing the First Amended Complaint, Judge Cannon warned that the Second Amended Complaint would be Dr. Misquith's last chance to plead claims upon which relief could be granted.  He has failed to do so.  Therefore, it is RECOMMENDED that the Motion to Dismiss the Second Amended Complaint be

GRANTED.  In accordance with Judge Cannon's Order, dismissal of Counts I-XVIII should be with prejudice as to all Defendants. The dismissal of Counts XIX-XXI should be without prejudice but without further leave to amend.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 29th day of September 2021.

BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

25